IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TEDD MALTER                                                                PLAINTIFF

           v.                    Civil No. 09-2027

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                             DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Tedd Malter, brings this action under 42 U.S.C. § 405(g), seeking judicial ). review of a decision of the Commissioner of Social Security Administration (Commissioner) concluding that plaintiff was responsible for an overpayment of benefits. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background**

On September 17, 1991, plaintiff applied for social security benefits. (Tr. 166-169, 296-299). The Commissioner approved plaintiffs applications and concluded that plaintiff became eligible for benefits in January 1991, plaintiff's alleged date of onset. (Tr. 75, 300). On April 22, 2006, the Commissioner notified plaintiff that the agency had overpaid him $48,585.00 in benefits between July 1998 and October 2004. (Tr. 148-151). Plaintiff requested waiver of the overpayment. (Tr.115-122, 139-146). After a personal conference with plaintiff, the agency concluded that plaintiff had been overpaid and such overpayment could not be waived. (Tr. 89-93, 152-155).

An administrative hearing was held on August 9, 2007, at which the plaintiff appeared personally and testified, as did his accountants/bookkeepers, Jason and Joan Day. (Tr. 27-74).

On February 6, 2008, the ALJ found that plaintiff was responsible for repayment of the overpayment. (Tr. 23-26).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 5, 2009. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 9, 10).

## II.    **Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gladden v. Callahan*, 139 F.3d 1219, 1220, 1222, 1223 (8th Cir.1998). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

Under the Social Security Act, the Secretary may require a person who has received an overpayment to refund the amount paid in excess of the correct amount. 42 U.S.C. § 1383(b).

2

The burden of proving that an overpayment should not be recovered is on the recipient of the overpaid Social Security benefits. *Bray v. Bowen*, 854 F.2d 685, 687 (8th Cir. 1988). Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the administration seeks to recover the overpayment from liability for repayment if such individual is not without fault. 20 C.F.R. § 404.507. The Administration's regulations state that a claimant is at fault if he knew or should have known the overpayment was incorrect. *See* 20 C.F.R. § 404.507. The Administration's regulations also state that the determination of fault is only made as to the overpaid individual or any other person from whom the Administration seeks to recover. *See id.*

In determining whether an individual is at fault, the Commissioner will consider all pertinent circumstances, including the individual's age and intelligence and any physical, mental, educational, or linguistic limitations. *Id.* What constitutes fault on the part of the overpaid individual depends upon whether the facts show that the incorrect payment to the individual resulted from

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
> (b) Failure to furnish information which he knew or should have known to be material; or
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The regulations also state:

> A benefit payment. . . to . . . an individual who fails to meet one or more requirements for entitlement to such payment . . . constitutes an entitlement overpayment. Where an individual . . . accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent

3

AO72A
(Rev. 8/82)

provision of the Social Security Act or regulations pertaining thereto . . . such individual, in accepting such overpayment, will be deemed to be without fault.

20 C.F.R.§ 404.510a.

### III. Evidence Presented

Plaintiff does not dispute that the agency overpaid him $48,585.00 in benefits between July 1998 and October 2004. (Tr. 148-151). Instead, he contends that the agency should have waived recovery of the overpayment.

After plaintiff began receiving disability benefits, he returned to work. In April 1993, he completed a work activity report indicating that he had been working at IHSS caring for a terminally ill patient since January 1993. (Tr. 221-223)

In May 1993, the Commissioner initiated a continuing disability review and found that plaintiff had begun working in January 1993. (Tr. 176, 224). Although the Commissioner determined that plaintiff's disability continued, the Commissioner notified plaintiff that the agency would review his claim in September 1993 because it appeared that his nine month trial work period would end at that time. (Tr. 176, 178).

In August 1993, plaintiff completed a statement for determining continuing eligibility for SSI. (Tr. 336-341). On this form he indicated that he had been working for IHSS since prior to April 1993 and was currently employed. (Tr. 337). He estimated his future monthly earnings to be $1190.00. (Tr. 338).

In September 1993, plaintiff reported that he had earned $1200.00 per month in January, February, March, and April 1993. (Tr. 225-228). He stated that he was afraid that after his patient passed away, he would have no means of supporting himself. (Tr. 225-228).

4

In November 1993, plaintiff was notified that he had received an overpayment of SSI in the amount of $465.00 for April 1993 through June 1993. (Tr. 342-347, 358-359). The letter explained the overpayment, how plaintiff could remit payment, and what plaintiff could do if he felt the Commissioner had erred. (Tr. 342-347). Records indicate that plaintiff filed a request for a waiver of overpayment. (Tr. 348-355). Plaintiff stated that he was not at fault for the overpayment because he had notified the Commissioner of his temporary employment. However, he could not remember who he spoke with at the agency. (Tr. 348-355).

On December 7, 1993, the Commissioner determined that plaintiff was not at fault for the overpayment of $465.00. (Tr. 358-359). The disposition paperwork indicates that the reporting responsibilities were explained to plaintiff. (Tr. 358-359).

In January 1994, the Commissioner notified plaintiff that he was no longer eligible for disability benefits because he had performed substantial gainful activity beginning October 1993. (Tr. 207-209). The Commissioner advised plaintiff that he had completed his nine month trial work period in September 1993. (Tr. 207). Further, the letter explained that the law provides for a nine month trial work period so that individuals can test their ability to work in spite of their health problems. It clearly states that the nine months need not be in a row and can be separated by months or even years. According to the letter, generally, only months in which the individual earned over $200 in gross wages or worked more than 40 hours in self-employment counted as trial work months. Plaintiff was given ten days to notify the agency of his objections to this finding before the agency entered a decision to stop his benefits. (Tr. 209).

In March 1994, the Commissioner notified plaintiff that he was no longer disabled as of October 1993 because he could perform substantial gainful activity despite his health problems.

5

(Tr. 76-77, 211-213). The letter stated that plaintiff's trial work period ended October 1993 and that he was entitled to benefits for that month and the two months immediately following. (Tr. 211). The letter defined substantial gainful activity, noting that work could be substantial even if it was performed part-time. This letter advised plaintiff that if he stopped performing substantial gainful activity within 36 months of September 1993, the end of his trial work period, the agency could restart his benefits without a new application, if he remained disabled. (Tr. 212). Records indicate that plaintiff's benefits were subsequently restarted during the extended period of eligibility when he was no longer performing substantial gainful activity.

In April 1994, the agency notified plaintiff that he had been paid overpaid $1,494.00 for January 1994 thru Mach 1994. (Tr. 214-215). The letter states that they were unable to pay him benefits beginning in January 1994 due to his work activity. (Tr. 214-215).

In April 1995, plaintiff acknowledged that he had been overpaid $1.494.00 and requested that $60.00 per month be withheld from his benefits each month until the overpayment was paid. (Tr. 108-109). Said request was to be effective in May 1995. (Tr. 108-109).

In September 1995, plaintiff was notified that his case was under a continuing disability review. (Tr. 216). The letter indicates that the Commissioner was reviewing his case because his earnings summary showed that he earned $12, 846.03 in 1994 and they needed to know more about his work. A pamphlet entitled "Benefits for Disabled People Who Return to Work" was enclosed for his review. (Tr. 216). Plaintiff completed a report of work activity-continuing disability form indicating that he had worked for IHHS as a care giver from January 1993 until June 1994. (Tr. 217-220). He indicated that he had also worked for Precision Radiator from April or May 1994 until November 2, 1994, when he sustained an on-the-job injury and stopped

6

working. (Tr. 218, 241). Plaintiff also reported working for John Jones Community Clinic from February 14, 1995 until April 28, 1995, at which time he stopped working due to a car accident and was then terminated by the employer. (Tr. 218). Plaintiff's earnings records show that he remained below substantial gainful activity, earning only $1,272.00 in 1995; $2,115.00 in 1996; and, $1,655.00 in 1997. (Tr. 256).

In November 1995, a continuing disability review form completed by Dennis Solle with the Administration indicates that plaintiff's disability was continued from December 1994 until November 4, 1995. (Tr. 78). Although he had completed his trial work period, they found that the work he had been doing did not show the ability to do substantial gainful work. (Tr. 94-95). An explanation of the trial work was included and plaintiff was advised of the need to promptly report certain events, including changes in his work activity, that may affect his benefits. (Tr. 94-95).

On June 27, 1996, plaintiff was notified by the Commissioner that he had received an overpayment of SSI in the amount of $1,248.56. (Tr. 368-373, 396). This amount represented payments received for January 1996 through May 1996. Further, it stated that this overpayment was in addition to a previous overpayment of $1,152.18 that remained on his record and the result of plaintiff's earnings during this time period. The letter stated that plaintiff had the right to appeal the decision and provided him with instructions on how to repay the monies. (Tr. 368-373).

On July 10, 1996, plaintiff completed another waiver. (Tr. 388-395). He denied knowledge of an overpayment and stated that the amount they were taking out of his check for the previous overpayment made it difficult for him to make ends meet. Plaintiff also contended

7

**AO72A**
**(Rev. 8/82)**

that he obtained minimum wage employment for short periods and notified the Commissioner when he did so. (Tr. 388-395).

On August 4, 1996, plaintiff completed a statement for determining continuing eligibility for SSI. (Tr. 374-379). He indicated that he had worked for State Net from May 1995 until April 1996, earning $600 biweekly. (Tr. 374-379).

On August 13, 1996, the Commissioner decided not to waive plaintiff's overpayment of $1,248.56. (Tr. 380-383). Internal paperwork indicates that plaintiff failed to report his earnings so that his SSI benefits could be adjusted. Accordingly, he was found to be at fault. (Tr. 380-383).

On February 4, 1997, plaintiff completed a statement for determining continuing eligibility for SSI. (Tr. 430-435). He reported no income since August 1, 1996. (Tr. 430-435).

In May 1997, plaintiff completed a work activity report indicating that he no longer worked for IHSS because the patient was now deceased. (Tr. 229-231). He seemed to be confused by the form, asking that the Commissioner call him in for an interview so that he could be certain he was providing the information they were requesting. (Tr. 229-231).

In July 1997, a continuing disability review concluded that plaintiff's disability continued. (Tr. 443-445). He was notified that he would continue to receive SSI payments if he still met all the other eligibility requirements. Again, he was reminded to notify the Commissioner if he returned to work or his job, pay, or work expenses changed. (Tr. 443-445).

On July 7, 1998, the Commissioner informed plaintiff that he had been overpaid $1,224.00 for the period of January 1997 through June 1997, due to plaintiff's receipt of worker's compensation payments. The noticed advised plaintiff to remit the overpayment within

30 days or the Commissioner would recover the overpayment by withholding his full benefit each month beginning with the payment he would normally receive in October 1998. (Tr. 111).

In August 1998, plaintiff wrote a letter to the Commissioner indicating that he was recovering from spinal fusion surgery and had not yet been released to return to work. (Tr. 110). He stated that the withholding of any funds would place an undue hardship on him, as his disability was his only means of income. (Tr. 110).

In October 2003, a computer entry indicates that the agency sent plaintiff a letter explaining his reporting responsibilities and that it would assess a penalty the next time he continuously worked without reporting it. (Tr. 22).

In August 2004, plaintiff, through his accountant, notified the Commissioner that he no longer wished to receive benefits because he was working and his trial work period was up. (Tr. 60, 233). The accountant indicated that plaintiff would be on the road for about a month. (Tr. 233). Erin Carmack with the SSA processed plaintiff's work earnings for the years 1997, 1998, 2001, 2002, and 2003. She noted that this resulted in a cessation beginning July 1998. The record states that due process was sent this same day. (Tr. 233).

In October 2004, plaintiff was informed that his benefits had ended because of substantial work and that he was not entitled to payments beginning July 1998. (Tr. 236-239). The trial work period was again explained to plaintiff and he was given ten days to respond. (Tr. 236-239).

In November 2004, the Commissioner notified plaintiff that his trial work period had ended in September 1993. (Tr. 234-235). Further, it stated that his extended period of eligibility

9

that began in October 1993 had now expired. The Commissioner concluded that plaintiff was only entitled to benefits through July 1998. (Tr. 79-80, 88-89, 234).

On January 7, 2005, the Commissioner notified plaintiff that the continuing disability review had concluded that plaintiff's health had improved. (Tr. 112-114, 446-447). The Commissioner concluded that plaintiff was no longer disabled as of January 1, 2005. As such, he would continue to receive benefits for the following two months, with March 2005 being his last check. (Tr. 112-114).

On October 27, 2005, the Commissioner's office sent plaintiff a letter stating that they needed to speak to him about an important Social Security matter. (Tr. 123). Telephone numbers were provided so that plaintiff could call. (Tr. 123).

This same date, plaintiff was sent a billing statement indicating that the Commissioner had not received repayment of the $659.50 overpayment that was due on October 14, 2005. (Tr. 124-127). Plaintiff was given 30 days to remit payment before the Commissioner sought repayment through garnishment of benefits and/or wages. (Tr. 124-127).

On November 12, 2005, plaintiff completed a Request for Waiver of Overpayment Recovery. (Tr. 115-122). He indicated that he had informed the Commissioner of the change or event that caused him to be overpaid, but provided no details.

On November 29, 2005, plaintiff was sent a second letter requesting that he contact the Commissioner concerning his social security. (Tr. 135)

On April 22, 2006, the Commissioner notified plaintiff that the agency had overpaid him $48, 585.00 in benefits between July 1998 and October 2004. (Tr. 148-151).

10

On February 9, 2006, plaintiff completed a Waiver of Overpayment Recovery. (Tr. 139-146). The only asset reported was a 1976 Ford van worth $300.00. Plaintiff indicated that he was employed with Peacock Transportation and brought home $2000.00 per month. His monthly expenditures were said to total $1947.00. This included rent, food, utilities, clothing, taxes, insurance, car operation and maintenance, ATM fees, automobile tags, and accounting fees. (Tr. 144).

On May 5, 2006, the Commissioner notified plaintiff that his request for a waiver had been denied. (Tr. 152-153). However, the letter indicated that plaintiff had a right to meet with the Commissioner prior to the rendering of a final decision regarding whether plaintiff had to pay back the overpayment. (Tr. 152-153).

On May 26, 2006, the Commissioner denial of plaintiff's request for waiver became final. (Tr. 91-93). Records indicate that plaintiff had claimed to not understand the trial work period provisions, stating he was told that a person received a new trial work period each time they changed the type of work they were doing. However, the Commissioner noted that plaintiff had been notified in March 1994 that his trial work period had been used and he was no longer entitled to benefits. The trial work period and extended period of eligibility provisions were explained to him in that notice. In January 1994, he was again notified that benefits would not be payable beginning January 1994 because of substantial work. This letter also explained how work and earnings affected payment. In September 1995, plaintiff was sent a publication entitled "Benefits for Disabled People Who Return to Work," again explaining the trial work period provisions and rules regarding working. Then, in November 1995, plaintiff was sent another letter wherein the trial work period was explained and he was advised to promptly report events

11

that may affect his benefits. Therefore, the Commissioner concluded that enough information had been provided to plaintiff that he should have been able to understand the trial work period and extended period of eligibility provisions. He should have known that he was not due Social Security benefits for months after his trial work period in which he was earning more than the allowable limits. Therefore, they determined that plaintiff was not without fault in causing the overpayment. (Tr. 91-93).

At the administrative hearing, plaintiff testified that he had obtained disability in 1991, due to severe depression and alcoholism. (Tr. 33). He acknowledged receiving frequent notifications from the Commissioner that there was an overpayment, stating that they deducted a percentage from his check to pay back the overpayment. (Tr. 32). However, plaintiff stated that he contacted the Commissioner by phone each time his employment status changed. (Tr. 32, 41). Of course, he did not have any record of these phone calls. (Tr. 40). He reported that some of the work was project work and some just temporary positions. (Tr. 39). Plaintiff also testified that his rehabilitation counselor had misinformed him regarding the trial work period provisions. (Tr. 37). He was purportedly told that he could work for 9 months at a time and make any amount of money without losing his benefits. Plaintiff contends that he did not understand that he was only entitled to one trial work period totaling 9 months. (Tr. 37).

Plaintiff's accountant, Joan Day testified that she contacted the Commissioner in August 2004, notifying them that plaintiff had returned to work and asking what needed to be done to discontinue his disability checks. She stated that the Commissioner sent plaintiff some paperwork to be complete and scheduled him for a psychological consult in December 2004. (Tr. 59-62). However, his checks continued. Because plaintiff had cancelled the checking

12

account into which the checks were automatically deposited, plaintiff began receiving the checks by mail. (Tr. 72-73). Ms. Day testified that she mailed one of the checks back to the Commissioner. (Tr. 59).

## IV. Discussion

After reviewing the entire record in this case, the undersigned finds substantial evidence to support the ALJ's determination that plaintiff was not without fault. The record indicates that plaintiff was found to be disabled as of 1991, due to depression and alcoholism. Aside from an affidavit filed by plaintiff in connection with the present case, there is nothing in the record to suggest that plaintiff's mental impairment prevented him from understanding his reporting responsibilities and obligations. In fact, plaintiff did not assert this as an issue before the ALJ. However, perhaps the fact most telling of plaintiff's intelligence is the fact that he hired accountants/bookkeepers, Jason and Joan Day, to receive his mail and handle his personal affairs for him because he was a cross country semi-truck driver and would sometimes be away from home for long periods of time. Further, aside from one document on which plaintiff indicated that he was not certain what information the Commissioner was requesting, the record is devoid of any evidence to show that plaintiff was incapable of understanding the circumstances. Therefore, we find that plaintiff was more than capable of reading and understanding the notices sent to him by the Commissioner.

Plaintiff had been notified of numerous overpayments since he began receiving benefits. He was first notified of an overpayment in November 1993. Repayment was waived because plaintiff stated that he was not familiar with the reporting requirements. Records indicate that plaintiff was then informed of the reporting requirements. In January 1994, plaintiff was notified

13

that he was no longer entitled to receive benefits because he was performing substantial gainful activity. The notice provided plaintiff with an explanation of the trial work period and a definition of substantial gainful activity. In March 1994, plaintiff was again notified that his trial work period ended in October 1993 and that he was no longer entitled to benefits. This letter explained the extended period of eligibility and how he could reinstate benefits if his work activity dropped below substantial gainful activity and he remained disabled during the extended time period.

However, plaintiff continued to receive checks and, although aware that he was no longer entitled to benefits, he continued to accept the checks. In April, plaintiff was again notified of an overpayment for the months of January 1994 through March 1994. He acknowledged receiving an overpayment in the amount of $1,494.00 and made arrangements for repayment. In September 1995, plaintiff's case came under continuing review. Included with the letter was a pamphlet entitled "Benefits for Disabled People Who Return to Work" explaining how plaintiff's work could impact his ability to receive benefits. It was not until this time that plaintiff provided the agency with information concerning his employment with IHHS, Precision Radiator, and the John Jones Community Clinic. Although the Commissioner concluded that plaintiff remained disabled, the notice explained the trial work period and specifically listed events that required prompt reporting. It clearly states that plaintiff was entitled to **a** trial work period of up to 9 months and that those 9 months need not be consecutive. (Tr. 95).

Plaintiff's benefits were reinstated in November 1995, when his earnings fell below the substantial gainful activity threshold. However, he was again provided notice of an overpayment in June 1996 for payments received from January 1996 through May 1996. Again, it was noted

14

that the overpayment was due to plaintiff's earnings. In his waiver application, plaintiff contended that he had obtained only minimum wage employment for short periods of time and had notified the Commissioner each time he did so. However, his request was denied. There are no records between September 1995 and July 1996 to indicate that plaintiff reported any changes in employment, although he reportedly worked at State Net from May 1995 until April 1996 earning approximately $1200.00 per month. This was not reported until August 1996, in response to another continuing disability review. Plaintiff's next employment report was completed in February 1997, wherein he reported receiving no income since August 1996.

In July 1998, plaintiff was informed of yet another overpayment, this time for the period of January 1997 through June 1997, due to plaintiff's receipt of worker's compensation benefits. In July, a continuing disability review determined plaintiff remained eligible for benefits, but plaintiff was again reminded of his obligation to notify the Commission if he returned to work or his job, pay, or work expenses changed. There were no further employment or earnings reports filed by the plaintiff. In October 2003, plaintiff was sent a letter explaining his reporting responsibilities and stating that he would be assessed a penalty the next time he continuously worked without reporting it. (Tr. 22).

In August 2004, plaintiff's accountant called the Commissioner to have plaintiff's benefits stopped because he was working as a cross country semi-truck driver. A review of plaintiff's earnings records revealed that plaintiff had been performing substantial gainful activity since July 1998. In November, plaintiff was notified of the cessation of benefits. Again, the notice stated that his trial work period had ended in September 1993. However, the checks continued. In January 2005, plaintiff was notified that a continuing disability review had

15

concluded that plaintiff's health had improved and he was no longer disabled. He was told that March 2005 would be his last check. He continued to receive checks for another year before the Commissioner caught their error and sent him notice of overpayment for the period of July 1998 through October 2004.

The undersigned is of the opinion that plaintiff was well advised of his duty to report his employment and earnings information to the Commissioner. In fact, plaintiff acknowledged his duty when he testified that did report changes in his employment. Aside from his testimony, there is nothing in the record to indicate that plaintiff volunteered any information concerning his employment and earnings. It is clear that plaintiff reported this information only when prompted to do so by the Commissioner.

We note that plaintiff had received several overpayment notices prior to the one presently before the court. Having been through this process multiple times, we believe that plaintiff was well versed in his responsibilities. In fact, after the first overpayment in 1993 was waived, an agency employee noted that she explained the reporting responsibilities to the plaintiff. However, in spite of his first hand knowledge of what would happened if he failed to report his earnings, plaintiff failed to report and accepted benefit checks to which he was not entitled.

Although plaintiff contends that he was confused regarding the trial work period provisions, we believe he was given enough information that he should have known he was entitled to only one trial work period. Plaintiff argues that his work history bears out the fact that he believed he was entitled to work up to 9 months at a time and make as much money as possible without losing benefits. We note that his work history does indicate that plaintiff worked off and on throughout the years in 9 month increments. However, no showing of bad

16

faith is required for an individual to be at fault; even an honest mistake may be sufficient to constitute fault. *See Center v. Schweiker*, 704 F.2d 678, 679 (2nd Cir. 1983).

Here, as previously stated, plaintiff received multiple documents explaining what constituted a trial work period and advising him that his trial work period had ended in September 1993. He was also given a pamphlet explaining how his work could impact his eligibility for benefits. There is nothing in the record to indicate that the Commissioner or any of his agents said or did anything to mislead plaintiff concerning the trial work period. In fact, plaintiff testified that his misunderstanding arose as the result of information provided to him by a vocational rehabilitation counselor. Likewise, the letter that plaintiff's accountant assisted him in writing referred to advice plaintiff had received from a guidance counselor and employment-placement counselor. (Tr. 133). While the regulations do provide for waiver where the Commissioner or one of his representatives provided a person with misleading information, it does not provide the same protection when the misleading information is provided by someone else. *See* 20 C.F.R. § 404.510a. Given the fact that plaintiff was provided with at least three prior notices of overpayment explaining the trial work period and received multiple notices that his trial work period had ended in September 1993, we believe plaintiff was placed on notice that his trial work period had expired.

The notices also clearly defined substantial gainful activity and provided the amount of money plaintiff could earn in a month without losing benefits. These notices placed plaintiff on notice of the limited availability of disability benefits while working. Further, having been through the overpayment process several times in the past and made repayment on at least two occasions, we find that plaintiff should have known that his earnings constituted substantial

17

gainful activity, thereby rendering him ineligible to receive benefits. *See* 20 C.F.R. § 404.507 (2000) (individual will be considered to be at fault in receiving overpayment where incorrect payment resulted from, inter alia, his failure to furnish material information, or acceptance of payment which he knew or could have been expected to know was incorrect).

Plaintiff also asserts that he is without fault because the Commissioner continued to send him checks, even after he was told he was no longer entitled to benefits. He states that he believed he was entitled to the benefits as long as the Commissioner continued sending him payments. However, simply because the Commissioner may have also been at fault in not realizing an overpayment, does not relieve the plaintiff of his fault in receiving payments that he could have been expected to know were incorrect. *See* 20 C.F.R. § 404.507; *Bray v. Bowen*, 854 F.2d 685, 687 (5th Cir. 1988). Plaintiff was fully advised of his obligation to report his work activity and earnings and was informed that substantial gainful activity would render him ineligible for benefits. He was also informed at various points along the way that he was no longer entitled to benefits due to his earnings, yet plaintiff continued to cash checks to which he was not entitled. Clearly, plaintiff did not act in good faith. Therefore, we find that plaintiff is required to refund the overpayment.

### IV. <u>Conclusion</u>

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

18

DATED this 4th day of February 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**